**Dan GRISELL, Plaintiff-Appellant,**

v.

**CONSOLIDATED CITY OF INDIANAP-OLIS, Defendant-Appellee.**

No. 2–880A268.

Court of Appeals of Indiana, First District.

Sept. 8, 1981.

John C. Ruckelshaus, Walter F. Lockhart, Ruckelshaus, Roland & O'Connor, Indianapolis, for plaintiff-appellant.

John P. Ryan, John L. Lisher, Indianapolis, for defendant-appellee.

NEAL, Presiding Judge.

### STATEMENT OF THE CASE

Plaintiff-appellant Dan Grisell (Grisell) appeals a judgment of the Marion Superior Court, Civil Division, that upheld the action of the Merit Board of the Consolidated City Police Force of Indianapolis demoting him from sergeant to patrolman in a disciplinary proceeding for misconduct.

We affirm.

### STATEMENT OF THE FACTS

By letter dated December 15, 1978, Acting Chief of Police William Pond notified Grisell that he was charged with violations of Department Rules and Regulations and ordered him to appear before the Board of Captains on December 20, 1978, for a hearing on the charges. A hearing was conducted at which Grisell was not represented by counsel and of which no record was made. At the conclusion of the hearing, the Board of Captains recommended in writing to Acting Chief Pond that Grisell be found guilty on the charges and be demoted in rank from sergeant to patrolman. Acting on the recommendation, Pond so demoted Grisell, effective December 21, 1978.

Grisell appealed to the Indianapolis Police Merit Board where Grisell, represented by counsel, was afforded a full administrative hearing, de novo, on the charges. The Chief, represented by attorneys for the City of Indianapolis, presented evidence as did

Grisell, who testified on his own behalf. The Merit Board sustained Pond's action in a decision entered April 18, 1979. Grisell appealed the Merit Board's action in the Marion Superior Court, Civil Division, and from an adverse decision brings the present appeal.

## ISSUES

Grisell presents four issues for review but has consolidated them into one issue for purpose of argument. We perceive two distinct questions appropriate for our consideration.

I. Whether Grisell was denied due process under U.S.Const. Amend. XIV because he was not represented by counsel at the Board of Captains hearing and because no record thereof was made.

II. Whether certain provisions of the "Police Officer's Bill of Rights" are applicable to a hearing conducted before the disciplinary Board of Captains.

## DISCUSSION AND DECISION

Grisell's entire argument is directed toward alleged deficiencies in the Board of Captains hearing stage of police disciplinary procedures. Thus, it is appropriate, before discussing his points of contention, to review the statute prescribing those procedures. Because of its length, we shall summarize and condense those features of the statute that are relevant to the case at bar.

Ind.Code 18–4–12–27 prescribes the disciplinary procedures to be employed by police departments of consolidated cities of the first class; the Consolidated City of Indianapolis, having a population in excess of 250,-000, is such a city.[1] The ultimate authority over discipline of police force members is given to the chief of police or his designee (Chief). When a police officer is under investigation for violation of one or more of nine listed infractions, the Chief may suspend the charged officer under certain limitations. The Board of Captains has the duty to assist the Chief in disciplinary matters, but remains subordinate and advisory to the Chief. Charges against an officer are submitted to the Board of Captains which, following an investigation, makes written findings of fact and recommendations as to the merits of filing charges against the officer and submits them to the Chief. The Chief may, in his discretion, order the accused officer to appear before the Board of Captains on the charges recommended by the Board, and if he does so, the Board of Captains shall conduct a hearing. Following the hearing, at which the accused officer may have witnesses subpoenaed to testify in his behalf, the Board of Captains votes to determine the guilt or innocence of the accused. The statute is silent as to whether the accused officer may be represented by counsel before the Board of Captains hearing or whether the proceedings are to be recorded and transcribed. Regardless of its determination on the issue of guilt, the Board of Captains reduces its findings to writing. If guilt is determined, the Board of Captains makes recommendations for punishment. The findings and recommendations are then referred to the Chief and are made available to the accused officer. The Chief may then concur with the Board of Captains, or reverse the Board of Captains in full or in part. The Chief is empowered to levy punishment including suspension and demotion, and may recommend discharge to the Merit Board.

An officer disciplined under the above procedure may appeal to the Merit Board. The hearing before the Merit Board is an administrative hearing de novo where testimony is recorded. The Chief is represented by the City attorney or his deputy and the accused officer may be represented by counsel of his choice.

The evidence before the Merit Board consists of the findings of fact and recommendations of the Board of Captains, the written charges and the determination of the Chief upon the charges, and any other evidence requested by the Merit Board or presented by the aggrieved officer. The

1. *See,* Ind.Code 18–2–1–1.

Police Merit Board has power to partially or fully affirm the Chief's determination, or reverse it in whole or in part, and order the officer reinstated.

An officer aggrieved by the decision of the Merit Board may file a verified petition for review in the superior or circuit court of the county within thirty days of the written decision. Judicial review of the record is then undertaken without intervention of a jury, a decision is rendered, and either party may appeal.

Also at issue are provisions of the "Police Officer's Bill of Rights" (Bill), particularly Section 4, subsections G and J thereof. The trial court found that the Bill was approved by the Indianapolis Police Merit Board effective November 1, 1978. Section 4 of the Bill enumerates certain rights possessed by an officer under investigation or subject to interrogation for any reason that could lead to disciplinary action, demotion, dismissal, or criminal charges. The provisions at issue entitle the accused officer, upon his request, to representation by counsel and to have the proceedings recorded.

*Issue I. Due Process*

Grisell claims his rights under the due process clause of the Fourteenth Amendment to the United States Constitution were violated by the proceedings before the Board of Captains at which he was not represented by counsel and at which no transcription or recording was undertaken. He does not challenge as violative of due process the procedures followed at the hearing before the Merit Board or the propriety of the manner in which it was conducted. He questions neither the quality or sufficiency of the evidence presented at that hearing nor the suitability of the discipline imposed. He directs us to no event that prevented his having a full and fair hearing before the Merit Board. Though he claims generally to have suffered prejudice by not having counsel or a record made at the Board of Captains hearing, he alleges no specific prejudice to have been manifested. He claims no surprise or damage to his cause whatever. He contends that he

should be entitled to counsel and record whenever facts are developed that would carry over as evidence to a later stage of the disciplinary process.

Grisell's claims as to the absence of a record is based primarily upon the application of Ind.Code 18–4–12–27(f) which states:

"The hearing before the merit board shall be an administrative hearing, shall be de novo and shall be a hearing of record. The evidence before the board shall consist of the findings of fact and recommendations of the disciplinary board of captains, the written charges and the determination of the chief of police upon said charges, and any other evidence requested by the board or presented by the aggrieved officer."

We understand Grisell's contention as to the absence of a record to be the following: Under the statute, the evidence before the Merit Board is to include, *inter alia*, the findings of fact as determined by the Board of Captains. If the Merit Board makes an ultimate determination of guilt, there will always be some evidence (i. e., the Board of Captains' findings) to sustain the decision. Since no record of that hearing was made, it is impossible to determine whether sufficient evidence was presented to support the findings made therein, and any opportunity for meaningful review is denied.

■ It is clear that a police officer facing a proceeding that could lead to a reduction in rank or discharge enjoys due process rights. In *State ex rel. Warzyniak v. Grenchik*, (1978) Ind.App., 379 N.E.2d 997, 1000–01, the court stated:

"Before appellant policemen could have been deprived of Fourteenth Amendment guarantees, they must first have had a property interest which was protected by procedural due process. As explained in *Board of Regents of State Colleges v. Roth* (1972), 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548:

'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.

He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.'

*See also Town of Speedway v. Harris* (1976), Ind.App., 346 N.E.2d 646.

When 'cause' is required before an employment relationship may be altered (to the detriment of the employee), due process protections attach. *Roth, supra,* 408 U.S. at 578, 92 S.Ct. at 2709; *Gary Teachers Union, Local No. 4, A.F.T. v. School City of Gary* (1975), Ind.App., 332 N.E.2d 256, 259. Thus, the concept of property includes a legitimate claim of entitlement to continued employment at a particular rank, absent 'sufficient cause' for demotion. *Smulski v. Conley,* 435 F.Supp. 770, 772 (N.D.Ind., 1977); *Speedway, supra,* 346 N.E.2d at 650. According to *Bishop v. Wood* (1976), 426 U.S. 341, 344, 96 S.Ct. 2074, 2077-78, 48 L.Ed.2d 684, 'the sufficiency of the claim of entitlement must be decided by reference to state law' " (Footnote omitted.)

In the disciplinary scheme here under consideration, "cause" is considered to be a commission of one or more infractions enumerated in Ind.Code 18-4-12-27(a)(1).

In *Mathews v. Eldridge,* (1976) 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18, the Supreme Court of the United States considered the procedural due process requirements of administrative proceedings that may result in a deprivation of protected liberty or property interests. The Court in *Mathews* stated:

" ' "[D]ue process," unlike some legal rules, is not a fixed technical conception with a fixed content unrelated to time, place and circumstances.' *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895 [81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230] (1961). '[D]ue process is flexible and calls for

such procedural protections as the particular situation demands.' *Morrissey v. Brewer,* 408 U.S. 471, 481 [92 S.Ct. 2593, 2600, 33 L.Ed.2d 484] (1972). Accordingly, resolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected. *Arnett v. Kennedy, supra,* [416 U.S. 134] at 167-168, [94 S.Ct. 1633 at 1650-1651, 40 L.Ed.2d 15] (Powell, J., concurring in part); *Goldberg v. Kelly, supra,* [397 U.S. 254] at 263-266 [90 S.Ct. 1011 at 1018-1020, 25 L.Ed.2d 287]; *Cafeteria Workers v. McElroy, supra,* [367 U.S.] at 895 [81 S.Ct. at 1748-49]. More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors. First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. See, *e. g., Goldberg v. Kelly, supra,* [397 U.S.] at 263-271 [90 S.Ct. at 1018-1022]."

424 U.S. at 334-35, 96 S.Ct. at 902-03.

We recognized earlier that Grisell's interest in retaining his rank in the Department is a property interest that may not be affected to his detriment in the absence of due process.

█ It is the consideration of the second factor enumerated by the Court in *Mathews,* i. e., "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," to which the issue raised by Grisell directs our attention. If the findings of fact of the Board of Captains are to constitute substantive evidence and are competent in themselves to sustain a determina-

tion of guilt by the Merit Board, the trial court on judicial review would be unable to determine whether the Merit Board's order was based on substantial evidence.[2] It is thus possible under this procedure that an unfair deprivation of the aggrieved officer's property interest could occur and due process is threatened. We recognize Grisell has a constitutional right to a meaningful review of the final administrative action. *See State Board of Tax Commissioners v. Marion Superior Court, Civil Division, Room 5,* (1979) Ind., 392 N.E.2d 1161.

We are thus faced with a statutory procedure that is susceptible of application in a manner violative of due process. Although Grisell has not attacked the constitutionality of the statute directly, he asks us to construe the statute in such a way as to protect the aggrieved officer against an unconstitutional deprivation of his property interest in his employment. Our court is bound to uphold a statute if it can be reasonably construed, and we resolve any doubt as to its constitutionality in favor of the statute's validity. *Short v. Texaco, Inc.,* (1980) Ind., 406 N.E.2d 625. While we do not engage in statutory interpretation when a statute's meaning is clear, *State ex rel. Mental Health Commissioner v. Estate of Lotts,* (1975) 165 Ind.App. 347, 332 N.E.2d 234, we must so engage when the statute is ambiguous, or susceptible to more than one interpretation. *State ex rel. Bynum v. LaPorte Superior Court No. 1,* (1973) 259 Ind. 647, 291 N.E.2d 355. In that event, our aim is to divine the legislative intent behind the enactment. And, if more than one construction is possible, we may consider the consequences of a particular construction. *Id.* We must bring the statute in harmony with the constitution, if the statutory language permits, and if it is capable of any constitutional interpretation, it is constitutional. *Progressive Improvement Association of Downtown Terre Haute v. Catch All Corporation,* (1970) 254 Ind. 121, 258 N.E.2d 403.

Ind.Code 18–4–12–27(f), *supra,* contains provisions that are apparently inconsistent. On the one hand, that subsection provides that the proceeding before the Merit Board is to be a hearing de novo. Yet, on the other hand, it states that the evidence before the Merit Board is to include the findings of fact of the Board of Captains. A true de novo proceeding is one in which all issues are determined anew, based upon evidence presented at that proceeding. Such is not consistent with the notion that the Board of Captains' findings are to constitute substantive evidence before the Merit Board, as the findings represent factual issues already determined at the prior hearing.

We resolve this apparent problem by construing the statute so as to accord limited evidentiary effect to the Board of Captains' findings and recommendations. By our construction we resolve the inconsistency in the statute as well as insure that fundamental constitutional protections are enjoyed by an officer undergoing disciplinary proceedings, including the constitutional right to meaningful review of final administrative action.

We recognize that in the context of judicial review of final administrative action the term "de novo," as the proceeding before the trial court is statutorily characterized, has been construed in a restrictive fashion.

"Although the statute recites that the appeal shall be heard by the court *de novo,* this is not literally true. This has been held to mean, not that the issues at the hearing before the [Board of Public Works and Safety of the City of Mishawaka] are heard and determined anew, but rather that new issues are formed and determined.

"* * * a review or appeal to the courts from an administrative order or decision is limited to a consideration of whether or not the order was made in conformity with proper legal procedure, is based upon substantial evi-

---

2. Ind.Code 18–4–12–27(h) states in part: "The court, without jury, shall review the record and render its decision as in other administrative reviews."

dence, and does not violate any constitutional, statutory, or legal principle. * * *' *State ex rel. Public Service Commission v. Boone Circuit Court, etc.* (1956), 236 Ind. 202, 211, 138 N.E.2d 4.

Insofar as the findings of fact by an administrative board are concerned, the reviewing court is bound by them, if they are supported by the evidence. It may not substitute its judgment for that of the board. *Kinzel v. Rettinger* (1972), 151 Ind.App. 119, 277 N.E.2d 913."[3]

*City of Mishawaka v. Stewart,* (1974) 261 Ind. 670, 677, 310 N.E.2d 65, 68–69. *See also, City of Indianapolis v. Ingram,* (1978) Ind.App., 377 N.E.2d 877, *City of Gary v. Gause,* (1974) 162 Ind.App. 97, 317 N.E.2d 887. Of course, if the new issues raised upon trial court review require the resolution of additional factual considerations, trial is required as to those matters. *Van Horn v. City of Terre Haute,* (1976) 169 Ind.App. 133, 346 N.E.2d 628. The limited construction accorded "de novo" in the trial court setting is necessary, given the limited scope of trial court review of administrative action, and is entirely consistent therewith.

Clearly, the function of the Merit Board is not analogous to that of a trial court undertaking judicial review of a final agency determination. The findings of the Board of Captains are not binding upon the Merit Board, whereas facts found by an agency are binding upon the trial court. Indeed, the Merit Board's action is the final agency determination from which review is to be sought. The circumstances that compel a restrictive construction of "de novo" in the judicial review situation are not present.

We conclude that the hearing before the Merit Board is to be a truly de novo proceeding. That is, all issues are to be determined anew, based solely upon the evidence adduced at that hearing and independent of any previous findings. The charges, the findings and recommendations of the Board of Captains, and the Chief's determination thereon are to be used only to formulate the issues to be determined at the Merit Board proceeding, and those issues are to be thus limited. No new charges may be brought in addition to those previously found adversely to the officer and upon which the chief made his determination. The findings of the Board of Captains may not constitute even a scintilla of substantive evidence upon which the Merit Board may render an ultimate determination of guilt. It follows that the City bears the burden of going forward and proving the charges anew before the Merit Board. Upon resolving the charges against the officer, the Merit Board may then review the discipline imposed by the Chief.

As to Grisell's claim that due process requires his representation by counsel at the Board of Captains hearing, he has neither proffered supporting authority for the proposition nor advanced any specific incidence of prejudice he suffered as a result thereof. While we recognized earlier the possibility of prejudice in the absence of a record of that hearing if the findings determined therefrom were to constitute substantive evidence before the Merit Board, and so construed the statute to eliminate that possibility, we are not persuaded that such risk is inherent in the absence of representation by counsel.

Grisell was accorded before the Merit Board a full de novo hearing, at which he was represented by counsel and of which a record was prepared. The City developed its case anew. It did not rely on the Board of Captains' findings but adduced sufficient evidence before the Merit Board to support the final determination. Indeed, the Merit Board found the City to have failed in its proof as to one charge. The Merit Board's function in the disciplinary scheme in this respect is to insure that any prejudice suffered by an officer due to deficiencies in the earlier proceedings is cured. The constitutional problem raised by Grisell was not manifest in the instant action and

---

**3.** The provision of the statute there under consideration, Ind.Code 18–1–11–3, states in pertinent part: "All such appeals shall be tried by the court ..., and shall be heard de novo upon the issues raised...."

he has suffered no prejudice by the manner in which the disciplinary proceedings were conducted. Due process requires only one full-blown, trial-type administrative hearing. To require counsel and record at the earlier non-binding proceeding would be duplicative and would result in unwarranted additional administrative time and expense. Grisell's due process rights were preserved in the instant action.

### Issue II. Applicability of the "Police Officer's Bill of Rights"

Grisell contends he was entitled to be represented by counsel at the Board of Captains hearing and to have made a record thereof under certain provisions of the "Police Officer's Bill of Rights" (Bill).[4]

The pertinent provisions of the Bill read as follows:

"SECTION 4. Whenever a police officer is under investigation or subject to interrogation by members of his/her or any other investigative agency for any reason which could lead to disciplinary action, demotion, dismissal or criminal charges, such investigation or interrogation shall be conducted according to the following procedure:

\*     \*     \*     \*     \*     \*

G.   The interrogation of a police officer, shall be recorded upon the request of either party.

\*     \*     \*     \*     \*     \*

J.   At the request of any police officer under interrogation he/she shall have the right to be represented by counsel or any other representative of his/her choice who shall be present at all times during such interrogation whenever the interrogation relates to the officer's continued fitness for law enforcement service." (Our emphasis.)

Grisell contends that the Bill by its terms applies to the Board of Captains hearing since that proceeding constituted an investigation that could (and did) lead to disciplinary action and demotion. He concludes that the Board of Captains hearing and the Board's findings and recommendations should be void and of no effect. He asserts on appeal that he requested both that he be allowed representation by counsel and that the hearing be recorded, but these assertions are without testimonial support.[5] He has, therefore, waived the right to assert this error on appeal.

Notwithstanding Grisell's waiver, we are not persuaded of the merits of his argument under this issue. Grisell cites *Indiana Department of Public Welfare v. DeVoux*, (1974) 161 Ind.App. 40, 49, 314 N.E.2d 79, for the proposition that:

"It is well established that an administrative agency may not disregard its own regulations *in derogation of statutory and constitutional rights*. *Coleman v. City of Gary* (1942), 220 Ind. 446, 44 N.E.2d 101; *Davidson v. Review Board of the Indiana Employment Security Division* (1974), 160 Ind.App. 221, 311 N.E.2d 472." (Our emphasis.)

In *DeVoux*, the Indiana Department of Public Welfare was found to have errone-

---

4.   We are unable to determine with any precision the legal status of the Bill within the Department. Our scrutiny of the record reveals that the Bill was brought to the trial court's attention by an amended complaint for judicial review and was included in an accompanying motion for summary judgment. It is nowhere authenticated that the Bill is a rule or regulation of the Department. While courts may not take judicial notice of administrative rules and regulations that are not of statewide effect, *Bowen v. Metropolitan Board of Zoning Appeals in Marion County, Division III*, (1974) 161 Ind.App. 522, 317 N.E.2d 193, both parties agree the Bill has some vitality as a regulation and our disposition of Issue II on its merits allows us to assume the same.

5.   At the Merit Board hearing only the following references were made to the contested aspects of the prior hearing. This exchange occurred during Grisell's direct examination:

"Q  At the Disciplinary Board of Captains' hearing on December 20, 1978, were you represented by counsel?
A  No, sir, I was not.
Q  And to your knowledge, was that hearing recorded or transcribed in any fashion whatsoever?
A  No, sir, it was not."

ously denied a claimant benefits by basing its decision on evidence neither adduced at the claimant's administrative appeal hearing nor otherwise made available to the claimant. The procedure employed by the agency was in derogation of clearly established federal and state regulations and, therefore, resulted in an erroneous denial of benefits.

We determined, albeit implicitly, in Issue I that Grisell did not have a constitutional right to counsel and record of the Board of Captains hearing. We now consider whether Grisell had a statutory right to the same.

Ind.Code 18–4–12–27(b) establishes the disciplinary Board of Captains and prescribes certain procedures relative to disciplinary investigations and hearings before that Board. The Board of Captains hearing is to be conducted in accordance with the written directives of the Chief. Ind.Code 18–4–12–27(b)(2).[6] The statute makes no provision for the recording and transcription of the hearing or the right of an accused officer to be represented therein by counsel. At the hearing before the Merit Board, however, the statute explicitly provides for representation by counsel and that the hearing be of record. Ind.Code 18–4–12–27(f), *supra.*

■ We think that the legislative intent is clear that an accused officer is entitled of right under the statute neither to have a record made of the Board of Captains hearing nor to be represented by counsel therein. The statute is clear; no ambiguous language is present. While the statute explicitly provides for counsel and record at the Merit Board hearing, it is silent as to those features at the Board of Captains hearing. Both hearings are prescribed in the same statutory section. We think such silence in this statutory context is pregnant with the implication the omission was deliberate. "In construing a statute, it is just as important to recognize what a statute does not say as it is to recognize what it does." *State, ex rel. Schuerman v. Ripley County*

*Council,* (1979) Ind.App., 395 N.E.2d 867. Further, the legislature has authorized the Chief to design the directives according to which the Board of Captains hearing is to be conducted, Ind.Code 18–4–12–27(b)(2), but has not endowed the Merit Board with authority to prescribe the procedures to be followed in the Board of Captains proceeding. The Board of Captains is an in-house fact-finding and advisory body without power of final decision. The role of the Board of Captains thus limited, the legislature did not see fit to burden the procedure with undue formality. We therefore find that the denial of counsel and record at the Board of Captains hearing and is entirely consonant with the statute. Grisell had no statutory right to counsel or record at the Board of Captains hearing.

■ We are of the opinion that since the Merit Board acts independently of the Board of Captains, is not bound by the findings and recommendations determined by the Board of Captains, conducts a hearing de novo where all charges must be proven anew, and reaches the final determination from which review is to be sought, it is the Merit Board action only that is the subject of judicial review. The administrative action here is not without parallel in other administrative areas. For example, in cases concerning determinations made by the Review Board of the Indiana Employment Security Division, the Court of Appeals reviews the decision of the Review Board without reference to the conclusions of the deputy or referee. *Ervin v. Review Board of the Indiana Employment Security Division,* (1977) 173 Ind.App. 592, 364 N.E.2d 1189; *See also, Kuntz v. Review Board of the Indiana Employment Security Division,* (1979) Ind.App., 389 N.E.2d 342. We therefore decline to review the procedures undertaken preliminary to the Merit Board proceeding in the absence of a claim that prejudice occurred in the earlier proceeding that was carried forward to taint the Merit Board hearing.

---

**6.** Those directives, entitled "Procedures for Hearings by the Board of Captains," provide in part that, "The Chief of Police has determined that an accused officer is not entitled to have a record made of or any designee at the proceeding." Brief of Appellee, Appendix B.

Any deficiencies or errors occurring at any preliminary stage, the Board of Captains hearing, or the Chief's actions, are material to the review only to the extent such deficiencies or errors were carried forward into the Merit Board proceedings and prevented Grisell from having a fair, de novo hearing there.

For the foregoing reasons the decision of the trial court is affirmed.

Affirmed.

RATLIFF and YOUNG (participating by designation), JJ., concur.